## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

MARQUIS COPEZ,

    Plaintiff,

    v.

STEVEN SNOBERGER, *et al.,*

    Defendants.

Civil Action No.:  ELH-23-465

## MEMORANDUM OPINION

    The self-represented plaintiff, Marquis Copez, a Maryland prisoner confined at North Branch Correctional Institution ("NBCI"), filed correspondence construed as a civil rights complaint pursuant to 42 U.S.C. § 1983.  ECF 1.  He also submitted exhibits.  ECF 1-1.  As directed by the Court (ECF 3), Copez also filed a supplement to his original submission (ECF 4), along with additional exhibits.  ECF 4-1 to ECF 4-3.  I shall construe ECF 1 and ECF 4 collectively as the "Complaint."

    Defendants Samuel Snoberger, Gary Drozda, and Leon Goodrich[1] have moved to dismiss the Complaint or, in the alternative, for summary judgment (ECF 21), supported by a memorandum (ECF 21-1) (collectively, the "Motion").  They also submitted exhibits.  *See* ECF 21-2 through 21-7.  Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Copez was informed of his right to respond to the Motion, and that his failure to respond could result in dismissal of the Complaint.  ECF 22.  Copez did not respond.

---

[1] The Clerk will be directed to update the docket to reflect the correct names of the defendants.

No hearing is necessary to resolve the Motion.  *See* Local Rule 105.6. (D. Md. 2023). For the reasons that follow, I will grant the Motion based on Copez's failure to exhaust his administrative remedies.

## I.     Background

### A.  Complaint Allegations

The Complaint was received by the Court on February 17, 2023.  Copez alleges that he was assaulted by Defendant Snoberger, a correctional officer, on January 18, 2023.  ECF 1.  He adds: "This man still make[s] Homosexual Advances toward me after he assaulted me . . . ."  *Id.* According to Copez, his mother has talked to Major Gorolon, yet Copez is still "getting harassed on a daily basis."  *Id.*

Notably, plaintiff asserts that he "filed a Administrative Remedy procedure and they dismissed it without properly investigating the incident fully."  *Id.*  grievance ("ARP") or "ticket" was dismissed.  With his Complaint, plaintiff includes a copy of his Request For Administrative Remedy ("ARP"). ECF 1-1 at 1-3.  It is dated January 18, 2023.  *Id.* at 1.  The ARP contains a notation reflecting that it was received by the tier officer on January 19, 2023 (*id.* at 2), and it was date stamped as received by the Warden's office on February 6, 2023.  *Id.*

In the ARP,[2] Copez alleged that, as he was leaving the shower, he was called the "vulgar name" of "bitch" by Snoberger.  *Id.* at 1.  When Copez asked Snoberger what he had just said, Snoberger reiterated the insult and threw Copez "to the ground while handcuffed behind [his] back."

---

[2] Pages three through six of the attachment are illegible.  ECF 1-1.  However, Copez was provided an opportunity to supplement his Complaint in order to provide all pertinent information to the Court.

The ARP was dismissed on February 6, 2023. *Id.* The ARP states: "Inmates may not seek relief through the Administrative Remedy Procedure regarding disciplinary proceeding procedures and decisions." *Id.*

In his Supplement, Copez again reiterates that he was assaulted by Snoberger, and adds that he was "written a ticket an[d] was found not guilty" and accordingly he would like to "sue for defamation." ECF 4 at 2. He seeks monetary damages. *Id.* at 3.

As to plaintiff's efforts to exhaust his claim, Copez writes: "It went over the 33 days mark and they Dismiss my Arp because [of] the color of my skin." *Id.* at 2. Along with his Supplement, Copez includes the Department of Public Safety and Correctional Services' Inmates Rights policy (ECF 4-1); a single page from an Inmate Hearing Record for a report dated January 12, 2023 (ECF 4-2); a letter from Copez to me (ECF 4-3 at 1); and declarations from inmates Robert Warren and Da'Fon Canty (ECF 4-3 at 2-4).

Defendants Drozda and Goodrich are named in the Complaint. But, plaintiff does not provide any facts in the Complaint regarding their involvement.

**B. Defendants' Motion**

In response, defendants assert: (1) Copez has failed to state a claim upon which relief may be granted (ECF 21-1 at 8); (2) there is no genuine dispute of material fact regarding the alleged assault (*id.* at 11); and (3) Copez's claims are barred by the Prison Litigation Reform Act because he failed to exhaust his administrative remedies (*id.* at 15).

As to their exhaustion argument, defendants acknowledge that Copez filed an ARP with the Warden regarding the alleged incident on January 18, 2023, and they reference the ARP Copez attached to his initial Complaint. ECF 21-1 at 17; *see also* ECF 1-1. However, defendants note that when his ARP was procedurally dismissed, Copez never took any further steps to

exhaust his claims.  In support thereof, they attach the Declaration of Kristina Donnelly, Special Assistant to the Director of Patuxent Institution, as an exhibit to their Motion.  ECF 21-7. Donnelly,  who has "access to requests for administrative remedies ('ARPs') that are appealed by prisoners throughout the Maryland Division of Correction to the Commissioner of Correction," attests that a "search of the available records did not produce any record of the Headquarters Administrative Remedy Procedure (APR)/Inmate Grievance Process (IGP) Unit having received an ARP appeal from incarcerated person Marquis Copez…related to the subject incident that occurred on January 18, 2023."  *Id.*  Donnelly includes a record of appeals filed by Copez in the Commissioner's office, and the only two appeals contained in the record were filed in 2012, long before the allegations at issue here.  *Id.* at 3.  Further, defendants note that in his Supplement, Copez "admitted that he did not appeal the ARP dismissal."  ECF 21-1 at 17; *see also* ECF 4 (stating "it went over the 33 days mark, and they Dismiss my ARP because the color of my skin.").  They note that it is unclear what Copez meant by this, and he offers no supporting proof or clarifying details.  ECF 21-1 at 17-18.

I agree that Copez has failed to state a claim as to Drozda and Goodrich.  Moreover, he has not exhausted his administrative remedies.  For the reasons articulated below, defendants are entitled to dismissal.

## II.    Standard of Review

### A.

Copez is self-represented.  Therefore, his submissions are liberally construed.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see* Fed. R. Civ. P. 8(f) ("All pleadings shall be so construed as to do substantial justice"); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that claims of self-represented litigants are held "to less stringent standards than formal pleadings drafted by

lawyers"); *accord Bala v. Cmm'w of Va. Dep't of Conservation & Recreation*, 532 F. App'x 332, 334 (4th Cir. 2013) (per curiam).  But, the court must also abide by the "'affirmative obligation of the trial judge to prevent 'factually unsupported claims and defenses' from proceeding to trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

## B.

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6)*. Nadendla v. WakeMed*, 24 F.4th 299, 304–05 (4th Cir. 2022); *Fessler v. Int'l Bus. Machs. Corp.*, 959 F.3d 146, 152 (4th Cir. 2020); *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom. McBurney v. Young*, 569 U.S. 221 (2013).  A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2).  *See Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325–26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002).  It provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The purpose of the rule is to provide the defendant with "fair notice" of the claims and the "grounds" for entitlement to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570*; see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); *see also Fauconier v. Clarke*, 966 F.3d 265, 276 (4th Cir. 2020); *Paradise Wire & Cable Defined Benefit Pension Plan*, 918 F.3d at 317–18; *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

A plaintiff need not include "detailed factual allegations" to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (per curiam). However, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In other words, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of relief. *Iqbal*, 556 U.S. at 678. Instead, to satisfy the minimal requirements of Rule 8(a)(2), the

complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, "a court 'must accept as true all of the factual allegations contained in the complaint,' and must 'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (alteration in *Retfalvi*) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). However, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi*, 930 F.3d at 605 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Glassman v. Arlington Cnty.*, 628 F.3d 140, 146 (4th Cir. 2010).

"A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012). But, as noted, "[m]ere recitals of a cause of action, supported only by conclusory statements, are insufficient to survive" a Rule 12(b)(6) motion. *Morrow v. Navy Federal Credit Union*, 2022 WL 2526676, at *2 (4th Cir. July 7, 2022).

Ordinarily, when ruling on a Rule 12(b)(6) motion, courts do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (citation omitted); *see Bing v. Brio Sys.*, LLC, 959 F.3d 605, 616 (4th Cir. 2020). But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss

filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan*, 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.*' " *Goodman*, 494 F.3d at 464 (emphasis in *Goodman*) (quoting *Forst*, 4 F.3d at 250); *see L.N.P. v. Kijakazi*, 64 F.4th 577, 585–86 (4th Cir. 2023).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448). *See Goines*, 822 F.3d at 166 (a court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits"); *see also Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999). In contrast, the court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein[.]" *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013), *abrogated on other grounds by Reed v. Town of Gilbert*, 576 U.S. 155 (2015); *see Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).

Under limited circumstances, however, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015). In particular, a court may "consider a document submitted by the movant that [is] not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166 (citations omitted); *see also Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019); *Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied sub nom.*, *City of Greensboro v. BNT Ad Agency, LLC*, 583 U.S. 1044 (2017); *Kensington Volunteer Fire Dep't v. Montgomery Cnty.*, 684 F.3d 462, 467 (4th Cir. 2012).

To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011)) (emphasis in original) (citation omitted); *see also Brentzel v. Fairfax Transfer and Storage, Inc.,* 2021 WL 6138286, at *2 (4th Cir. Dec. 29, 2021) (per curiam); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). "As examples, 'courts have found integral the allegedly fraudulent document in a fraud action, the allegedly libelous magazine article in a libel action, and the documents that constitute the core of the parties' contractual relationship in a breach of contract dispute.'" *Chesapeake Bay Found., Inc.*, 794 F. Supp. 2d at 611 n.4 (quoting *Fisher v. Md. Dep't of Pub. Safety & Corr. Servs.*, JFM-10-0206, 2010 WL 2732334, at *2 (D. Md. July 8, 2010)).

In addition, "a court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'"

*Goldfarb*, 791 F.3d at 508; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.,* 637 F.3d 462, 466 (4th Cir. 2011), *cert. denied*, 565 U.S. 825 (2011); *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). However, under Fed. R. Evid. 201, a court may only take judicial notice of adjudicative facts if they are "not subject to reasonable dispute," in that they are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *See Parikh v. Frosh*, PX-22-110, 2023 WL 131043, at *5 (D. Md. Jan. 9, 2023), *aff'd in part, rev'd in part on other grounds*, *Parikh v. Brown*, 2024 WL 2764720 (4th Cir. May 30, 2024) (per curiam); *Brown v. Ocwen Loan Servicing, LLC*, PJM-14-3454, 2015 WL 5008763, at *1 n.3 (D. Md. Aug. 20, 2015), *aff'd*, 639 F. App'x 200 (4th Cir. 2016); *Green v. Wells Fargo Bank, N.A.*, 927 F. Supp. 2d 244, 246 n.2 (D. Md. 2013); *cf. Anderson v. Fed. Deposit Ins. Corp.*, 918 F.2d 1139, 1141 n.1 (4th Cir. 1990) (concluding that a district court may "properly take judicial notice of its own records").

## C.

Defendants' motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. *See* ECF 36. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways, Inc.,* 510 F.3d 442, 450 (4th Cir. 2007). Under Rule 12(b)(6), however, a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated

as one for summary judgment under Rule 56," but "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Adams Housing, LLC v. The City of Salisbury, Maryland,* 672 F. App'x 220, 222 (4th Cir. Nov. 29, 2016) (per curiam).

A court may not convert a motion to dismiss to one for summary judgment sua sponte, unless it gives notice to the parties that it will do so. *See Laughlin v. Metro Washington Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998) (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.,* 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials."); *see also Adams Housing, LLC*, 672 F. App'x at 622 ("The court must give notice to ensure that the party is aware that it must 'come forward with all of [its] evidence.'") (citation omitted). However, when, as here, the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin,* 149 F.3d at 261.

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5 C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.).

But, this discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id*. at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id*. at 165-67.

Summary judgment is generally inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont De Nemours and Co. v. Kolon Industries, Inc*., 637 F.3d 435, 448-49 (4th Cir. 2012); *see Putney v. Likin*, 656 F. App'x 632, 638-39 (4th Cir. July 14, 2016) (per curiam); *McCray v. Maryland Dep't of Transportation*, 741 F.3d 480, 483 (4th Cir. 2015). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co*., 80 F.3d 954, 961 (4th Cir. 1996)).

To raise adequately the issue that discovery is needed, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)). "[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted), *rev'd on other grounds sub nom. Gardner v. Ally Fin., Inc.*, 514 Fed. App'x 378 (4th Cir. 2013) (per curiam). A nonmoving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery

12

would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see McClure v. Ports*, 914 F.3d 866, 874-75 (4th Cir. 2019); *Gordon v. CIGNA Corp.*, 890 F.3d 463, 479 (4th Cir. 2018); *Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods*, 302 F.3d at 244 (citations omitted). But, the nonmoving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. And, a court "should hesitate before denying a Rule 56(d) motion when the nonmovant seeks necessary information possessed only by the movant." *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014).

Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Harrods*, 302 F.3d at 244 (internal citations omitted).

According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (internal citations omitted); *see also Putney*, 656 F. App'x at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008). Moreover,

13

"[t]his is especially true where, as here, the non-moving party is proceeding pro se." *Putney*, 656 F. App'x at 638.

### D.

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986); *see also Cybernet, LLC v. David*, 954 F.3d 162, 168 (4th Cir. 2020); *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018); *Iraq Middle Mkt. Dev. Found v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017). "Applying that standard, the facts and all reasonable inferences drawn therefrom must be viewed in the light most favorable to the nonmoving party." *Aleman v. City of Charlotte*, 80 F.4th 264, 283–84 (4th Cir. 2023); *see Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990); *Dewberry Eng'rs Inc. v. Dewberry Grp., Inc.*, 77 F.4th 265, 277 (4th Cir. 2023); *Knibbs v. Momphard*, 30 F.4th 200, 206 (4th Cir. 2022); *Walker v. Donahoe*, 3 F.4th 676, 682 (4th Cir. 2021); *Hannah P. v. Coats*, 916 F.3d 327, 336 (4th Cir. 2019); *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017). The nonmoving party may avoid summary judgment by demonstrating that there is a genuine dispute of material fact that precludes the award of summary judgment as a matter of law. *Ricci v. DeStefano*, 557 U.S. 557, 585–86 (2009); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986); *Gordon v. CIGNA Corp.*, 890 F.3d 463, 470 (4th Cir. 2018).

Pursuant to Fed. R. Civ. P. 56(c)(1), where the moving party bears the burden of proof on the issue at trial, he must support his factual assertions by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials . . . ." But,

14

where the nonmovant bears the burden of proof at trial, the moving party may show that it is entitled to summary judgment by citing to evidence in the record, or "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325; *see also* Fed. R. Civ. P. 56(c)(1)(B).

The Supreme Court has clarified that not every factual dispute will defeat a summary judgment motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* at 248.

A dispute of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see CTB, Inc. v. Hog Slat, Inc.*, 954 F.3d 647, 658 (4th Cir. 2020); *Variety Stores, Inc.*, 888 F.3d at 659; *Sharif v. United Airlines, Inc.*, 841 F.3d 199, 2014 (4th Cir. 2016); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252; *see McAirlaids, Inc. v. Kimberly-Clark Corp.*, 756 F.3d 307, 310 (4th Cir. 2014).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [its] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004); *see Celotex Corp.*, 477 U.S. at 322–24. The nonmovant "must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere

15

existence of a scintilla of evidence." *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015) (internal quotation marks omitted); *see also Anderson*, 477 U.S. at 252; *Thompson v. Virginia*, 878 F.3d 89, 97 (4th Cir. 2017).  "Fanciful inferences and bald speculations of the sort no rational trier of fact would draw or engage in at trial need not be drawn or engaged in at summary judgment." *Local Union 7107 v. Clinchfield Coal Co.*, 124 F.3d 639, 640 (4th Cir. 1997) (citations omitted).  In short, "[u]nsupported speculation is not sufficient to defeat a summary judgment motion." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987); *see also Reddy v. Buttar*, 38 F.4th 393, 403–04 (4th Cir. 2022); *CTB, Inc.*, 954 F.3d at 659; *Harris v. Home Sales Co.*, 499 F. App'x 285, 294 (4th Cir. 2012).

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *accord Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016).  Therefore, in considering a summary judgment motion, the court may not weigh the evidence or make credibility determinations.  *Brown v. Lott*, No. 21-6928, 2022 WL 2093849, at *1 (4th Cir. June 10, 2022) (per curiam); *Knibbs*, 30 F.4th at 207, 213; *Betton v. Belue*, 942 F.3d 184, 190 (4th Cir. 2019); *Wilson v. Prince George's Cnty.*, 893 F.3d 213, 218–19 (4th Cir. 2018); *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007).  In the face of conflicting evidence, such as competing affidavits, a court must deny summary judgment, because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility. *See Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644–45 (4th Cir. 2002).

"[S]elf-serving affidavits offered by the non-movant can sometimes defeat summary

judgment." *Pfaller v. Amonette*, 55 F.4th 436, 450 (4th Cir. 2022); *see Harrell v. DeLuca*, 97 F.4th 180, 187 (4th Cir. March 27, 2024) (recognizing that the self-serving declarations of nonmovants "can defeat summary judgment"); *Mann v. Failey*, 578 F. App'x 267, 273 n.2 (4th Cir. 2014) (per curiam) (unpublished but orally argued) ("[T]he record could defeat summary judgment even if the evidence consisted exclusively of so-called 'self-serving' declarations from [the nonmovant] himself."); *see also* Fed. R. Civ. P. 56(c)(1)(A), (4).  In contrast, self-serving statements made by the movant are not sufficient.  *Pfaller*, 55 F.4th at 450 ("[H]ere it is the *movant* . . . who offers his own statements as the key evidence in support of summary judgment.  That is insufficient.") (emphasis in original); *Knibbs*, 30 F.4th at 222 (stating that "the dissent, like the district court, contravenes Rule 56 by accepting [the movant's] self-serving statements and reading the evidence in the light most favorable to *him*.") (emphasis in original).

"Courts in the Fourth Circuit may not consider inadmissible evidence on a motion for summary judgment." *Giles v. Nat'l R.R. Passenger Corp.*, 59 F.4th 696, 704 (4th Cir. 2023) (citing *Md. Highways Contractors Ass'n, Inc. v. Maryland*, 933 F.2d 1246, 1251 (4th Cir. 1991)). Therefore, to the extent that evidence amounts to inadmissible hearsay, it "cannot create a factual dispute" for purposes of summary judgment.  *Stanton v. Elliott*, 25 F.4th 227, 237 n.7 (4th Cir. 2022) (citing *Md. Highways Contractors Ass'n*, 933 F.3d at 1251); *see also Graves v. Lioi*, 930 F.3d 307, 326 n.15 (4th Cir. 2019) (observing that "hearsay, like other evidence inadmissible at trial, is ordinarily an inadequate basis for summary judgment") (citation and internal quotation marks omitted).

## E.

Copez has not responded to the defendants' Motion.  As noted, the suit contains no factual allegations as to Drozda and Goodrich.  Therefore, as to them, I shall construe the Motion under

Rule 12(b)(6).  But, as to Snoberger, I am satisfied that it is appropriate to address the motion as one for summary judgment because this will facilitate resolution of this case.

Even if, as to Snoberger, I were to construe the Motion under Rule 12(b)(6), I may consider the ARP.  Plaintiff alleges that he filed the ARP in January 2023, and that it was rejected by the Warden.  ECF 1-1.  He has also submitted a copy of the ARP with the suit.  As discussed, courts ordinarily may consider documents attached to a suit.  *Zak*, 780 F.3d at 606.  Moreover, "[w]hen the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper."  *Goines*, 822 F.3d at 167.

### III.    Discussion

### A.

As I have said, the Complaint contains no allegations of fact as to the conduct of Drozda or Goodrich.  Plainly put, the Complaint fails to state any claim as to these defendants – not even an imperfect one.  Therefore, I shall dismiss the suit as to Drozda and Goodrich.

However, I shall permit plaintiff to file an amended complaint as to Drozda and Goodrich, due within twenty-one days from the date of docketing of the attached Order.  Plaintiff is reminded that his suit must include a factual basis for relief as to each defendant named in the suit.  Failure to amend the suit within the time provided will result in dismissal, without prejudice.

### B.

I next consider the claim as to Snoberger.  I begin with the Prison Litigation Reform Act ("PLRA").  It requires a prisoner to exhaust all "available administrative remedies before bringing a § 1983 action.  *See Younger v. Crowder*, 79 F.4th 373, 377 (4th Cir. 2023); *Williams v. Carvajal*, 63 F.4th 279, 285 (4th Cir. 2023).  The PLRA provides, in pertinent part, 42 U.S.C. § 1997e(a):

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003), *aff'd*, 98 F. App'x 253 (4th Cir. 2004).

The doctrine governing exhaustion of administrative remedies has been well established through administrative law jurisprudence. It provides that a plaintiff is not entitled to judicial relief until the prescribed administrative remedies have been exhausted. *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). Therefore, a claim that has not been exhausted may not be considered by this Court. *See Jones v. Bock*, 549 U.S. 199, 220 (2007). In other words, exhaustion is mandatory, and a court ordinarily may not excuse a failure to exhaust. *Ross v. Blake*, 578 U.S. 632, 639 (2016) (citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining "[t]he mandatory 'shall'. . . normally creates an obligation impervious to judicial discretion")).

However, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See Bock*, 549 U.S. at 215-216; *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.2d 674, 682 (4th Cir. 2005).

The PLRA's exhaustion requirement serves several purposes. These include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Bock*, 549 U.S. at 219; *see Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (recognizing that exhaustion provides prison officials with the opportunity to respond to a complaint through proper use of administrative remedies). It is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process so that the agency reaches a decision on the merits. *Gibbs v. Bureau of Prisons*, 986 F. Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *Chase*, 286 F. Supp. at 530; *see also Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement so that the agency addresses the merits of the claim, but need not seek judicial review), *cert. denied*, 537 U.S. 949 (2002).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. *Moore*, 517 F.3d at 725, 729; *see Langford v. Couch*, 50 F. Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he . . . PLRA amendment made clear that exhaustion is now mandatory."). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford*, 548 U.S. at 88.

Of relevance here, this requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Id.* at 91 (quoting *Pozo*, 286 F.3d at 1024) (emphasis in original). But, the Court is "obligated to ensure that any defects in [administrative] exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

Notably, an inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a); *Younger*, 79 F.4th at 375. As explained in *Younger*, "[f]or an administrative remedy to qualify as 'available,' it must be able to provide some type of relief." *Id.* at 380 (citing *Ross*, 578 U.S. at 642). And, "even if a remedy is technically on the books, it is not 'available' if 'it operates as a dead end' or 'if it is so opaque that it becomes, practically speaking, incapable of use.'" *Younger*, 79 F.4th at 380 (quoting *Ross*, 578 U.S. at 643–44).

Conversely, a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him are no longer available. *See Woodford*, 548 U.S. 89. Therefore, to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies "in accordance with the applicable procedural rules," so that prison officials have been given an opportunity to address the claims administratively. *Id.* at 87. Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

In *Ross*, 578 U.S. at 635, the Supreme Court rejected a "freewheeling approach to exhaustion as inconsistent with the PLRA." In particular, it rejected a "special circumstances" exception to the exhaustion requirement. *Id.* at 637. But, it reiterated that "[a] prisoner need not exhaust remedies if they are not 'available.'" *Id.* at 635-36. And, "an administrative remedy is

not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore*, 517 F.3d at 725.

The *Ross* Court outlined three circumstances when an administrative remedy is unavailable and an inmate's duty to exhaust available remedies "does not come into play." *Ross*, 578 U.S. at 643. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* at 643-44. The third circumstance is when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644.

Maryland has an established "administrative remedy procedure" ("ARP") for use by Maryland State prisoners for "inmate complaint resolution." *See generally* Md. Code (2017 Repl. Vol.), §§ 10-201 *et seq.* of the Correctional Services Article ("C.S."); Code of Maryland Regulations ("COMAR") 12.02.28.02B(1) (defining ARP); *see also Younger*, 79 F.4th at 379. The grievance procedure applies to the submission of a "grievance against an official or employee of the Division of Correction ["DOC"]. . . ." C.S. § 10-206(a).

In particular, Maryland has created a "three-step process for reviewing inmate grievances." *Younger*, 79 F.4th at 379; *see generally* Md. Code (2017 Repl. Vol., 2023 Supp.), §§ 10-201 *et seq.* of the Correctional Services Article ("C.S."); Code of Maryland Regulations ("COMAR") § 12.02.28.02B(1) (defining ARP); *see also* C.S. § 10-206(a) (stating that the grievance procedure applies to the submission of a "grievance against an official or employee of the Division of Correction); COMAR §§ 12.02.28.05; 12.02.28.09. Regulations promulgated by the Maryland

Department of Public Safety and Correctional Services ("DPSCS") concerning the administrative

remedy procedure define a "grievance" to include a "complaint of any individual in the custody of

the [DOC] . . . against any officials or employees of the [DOC] . . . arising from the circumstances

of custody or confinement."  COMAR 12.07.01.01(B)(8).

In *Younger*, the Court explained, 79 F.4th at 379–80:

> The first two steps of the process are known as the Administrative Remedy
> Procedure.[] An inmate initiates the Administrative Remedy Procedure by filing a
> request for administrative remedy with the warden. Md. Code Regs.
> §§ 12.02.28.05, 12.02.28.09, 12.02.28.02(A)(14). Assuming the complaint is
> neither frivolous nor procedurally deficient, the inmate is entitled to a response
> within 30 days. *See* §§ 12.02.28.10, 12.02.28.12. If the inmate is unsatisfied with
> the response or the remedy provided, he may appeal to the Commissioner of
> Corrections [sic]. § 12.02.28.05(D)(2). Appeal to the Commissioner ends the
> Administrative Remedy Procedure. If the Commissioner denies the appeal, the
> inmate can proceed to the third and final step of the process and appeal to the Inmate
> Grievance Office. § 12.07.01.05(B).

To pursue a grievance, a prisoner confined in a Maryland prison may file a grievance with

the Inmate Grievance Office ("IGO") against any official or employee of the Division of

Correction ["DOC"].  C.S. § 10-206(a).  But, when the ARP process provides a possible remedy,

it must be followed and completed before an inmate may file a grievance with the IGO.  And, if

the prison has a grievance procedure that is approved by the IGO, the prisoner must first follow

the institutional ARP process before filing a grievance with the IGO.  *See* C.S. § 10-206(b).

As discussed, the ARP process consists of multiple steps.  For the first step, a prisoner is

required to file his initial ARP with his facility's "managing official," COMAR 12.02.28.05, which

is defined by COMAR 12.02.28.02(B)(14) as "the warden or other individual responsible for

management of a correctional facility" and defined under C.S. § 1-101(m) as "the administrator,

director, warden, superintendent, sheriff, or other individual responsible for the management of a

correctional facility."  Moreover, the ARP request must be filed within 30 days of the date on

which the incident occurred, or within 30 days of the date the prisoner first gained knowledge of the incident or injury giving rise to the complaint, whichever is later.  COMAR 12.02.28.09(B). The response from the managing official is due to the inmate within "30 calendar days of the date the inmate filed a formal complaint using the ARP."  COMAR § 12.02.28.12.H(3)(a).

The second step in the ARP process occurs if the managing official denies a prisoner's initial ARP or fails to respond to the ARP within the established time frame.  The prisoner has 30 days to file an appeal to the Commissioner of Correction.  COMAR 12.02.28.14(B)(5).

If the Commissioner of Correction denies an appeal, the prisoner has 30 days to file a grievance with the IGO.  COMAR 12.02.28.18; C.S. § 10-206(a); COMAR 12.07.01.05(B).[3] When filing with the IGO, a prisoner is required to include copies of the following: the initial request for administrative remedy, the warden's response to that request, a copy of the ARP appeal filed with the Commissioner of Correction, and a copy of the Commissioner's response.  COMAR 12.07.01.04(B)(9)(a).

If the grievance is determined to be "wholly lacking in merit on its face," the IGO may dismiss it "without a hearing …"  C.S. § 10-207(b)(1); *see also* COMAR 12.07.01.06(B).  An order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review.  C.S. § 10-207(b)(2)(ii).  However, if a hearing is deemed necessary by the IGO, the hearing is conducted by an administrative law judge with the Maryland Office of Administrative Hearings.  *See* C.S. § 10-208; COMAR 12.07.01.07-.08.  The conduct of such hearings is governed by statute.  *See* C.S. § 10-208; COMAR 12.07.01.07(D); *see also* Md. Code § 10-206(a)(1) of the State Government Article.

---

[3] If the Commissioner fails to respond, the grievant shall file an appeal within 30 days of the date the response was due.  COMAR 12.07.01.05(B)(2).

A decision of the administrative law judge denying all relief to the inmate is considered a final agency determination. C.S. § 10-209(b)(1)(ii); COMAR 12.07.01.10(A)(2). However, if the ALJ concludes that the inmate's complaint is wholly or partly meritorious, the decision constitutes a recommendation to the Secretary of DPSCS, who must make a final agency determination within fifteen days after receipt of the proposed decision of the administrative law judge. *See* C.S. § 10-209(b)(2),(c); COMAR 12.07.01.10(B).

The statute provides for judicial review. C.S. § 10-210. But, "[a] court may not consider an individual's grievance that is within the jurisdiction of the [Inmate Grievance] Office or the Office of Administrative Hearings unless the individual has exhausted the remedies provided" in Title 10, Subtitle 2 of the Correctional Services Article. C.S. § 10-210(a).

Notably, the ARP process does not apply to complaints relating to prisoner disciplinary procedures and decisions. OPS.185.0002.05C(3). If a prisoner is found guilty of a rule violation, the prisoner is entitled to appeal the hearing officer's guilty decision or sanction to the warden of the facility where he or she is incarcerated. COMAR 12.02.27.33(A)(1),(2). If the prisoner does not file a written appeal with the warden within fifteen days of receipt of the hearing officer's decision, he or she is considered to have waived the right to appeal. *Id.*; COMAR 12.02.27.33(A)(3). If the warden affirms the hearing officer's guilty finding or sanction, the prisoner may then appeal to the IGO. COMAR 12.02.27.33(D); *see also* COMAR 12.07.01.05 and .06C. When filing this appeal with the IGO, the prisoner is required to include a copy of the initial notice of inmate rule violation, the hearing record, the appeal to the warden, and the warden's response to the appeal. COMAR 12.07.01.04(B)(9)(b).

Defendants assert that Copez's claim is unexhausted. Copez filed an ARP on January 18, 2023. It was received by the tier officer on January 19, 2023. And, it was date stamped as

received by the Warden's office on February 6, 2023. ECF 1-1 at 1-3. The ARP was procedurally dismissed that same day, February 6, 2023. *Id.* Copez's Complaint was received by the Court just eleven days later, on February 17, 2023. ECF 1. Further, the Declaration of Kristina Donnelly and the supporting record confirm that no appeal by Copez was ever received by the Commissioner's office. ECF 21-7. Thus, the second step in the ARP process, filing an appeal to the Commissioner of Correction within 30 days of an adverse decision by the facility's managing official, was not completed by Copez. *See* COMAR 12.02.28.14(B)(5).

To be sure, the ARP reflects that it was "Dismissed for procedural reasons." ECF 1-1 at 2. Citing COMAR 12.02.28.04B(3), the ARP states: "Inmates may not seek relief through the Administrative Remedy Procedure regarding disciplinary proceeding procedures and decisions." ECF 1-1 at 2. This seems in error, as the ARP does not appear to pertain to a disciplinary procedure.

Nevertheless, even if the ARP was improperly dismissed, Copez could have, and should have, appealed that determination. Again, the record reveals that he did not do so, and thus the claims are unexhausted.

Alternatively, even if procedural dismissal of the ARP were proper, and even if the ARP did impermissibly relate to a disciplinary proceeding, Copez had another avenue available to him to exhaust his claim. As outlined above, he could have appealed the outcome of any disciplinary proceeding.[4] The date provided by Copez for the relevant disciplinary hearing is January 26, 2023. *See* ECF 4-2. His Complaint was filed in this Court just twenty-two days

---

[4] I note that Copez's correspondence and supplement both indicate that disciplinary proceedings related to the incident with Snoberger were dismissed. *See* ECF 1, ECF 4-2.

later, which is insufficient to complete the relevant appeals process.  Thus, under any construction, Copez's claims are unexhausted.

Copez was afforded an opportunity to respond to the defendants' Motion (ECF 22), and could have offered an explanation for his lack of exhaustion.  But, he has filed nothing further. Because Copez's claims as to Snoberger are unexhausted, defendant is entitled to dismissal of the claims against him.

### IV.    Conclusion

For the foregoing reasons, I shall grant the defendants' Motion (ECF 21), without prejudice.  And, with respect to Drozda and Goodrich, I shall grant leave to amend.

A separate Order follows.


<u>November 18, 2024</u>                                    _____/s/_____
Date                                                    Ellen L. Hollander
                                                        United States District Judge